IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GERARD SAVOY, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-10-01737 |
| § | |
| MICHAEL J. ASTRUE, COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 21), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 22), and Defendant's Motion for Summary Judgment (Document No. 12). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 12) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 22) is GRANTED, and that the decision of the Commissioner is REMANDED for further proceedings.

**I. Introduction**

Plaintiff Gerard Savoy ("Savoy") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final

1

decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act. *See* 20 C.F.R. §§ 404, 416. Savoy contends the Administrative Law Judge's ("ALJ") decision is flawed because substantial evidence does not support the ALJ's finding that Savoy's restless leg syndrome and obstructive sleep apnea are non-severe impairments. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision and that decision comports with applicable law. Namely, the Commissioner asserts that the ALJ properly determined the severity of Savoy's impairments at step two, and that substantial evidence supports the ALJ's residual functional capacity ("RFC") assessment, hypothetical question to the vocational expert, and step five determination.

## II. Administrative Proceedings

On June 25, 2008, Savoy applied for disability insurance benefits and supplemental security income benefits, alleging disability beginning May 1, 2008 (Tr. 116, 121). Savoy stated his asthma, bad back, and lung problems limited his ability to work. (Tr. 134). The Social Security Administration denied his applications at the initial and reconsideration stages. Savoy requested a hearing before the ALJ, and the Social Security Administration granted his request. (Tr. 90). The ALJ, Paul W. Schwarz, held a hearing on June 3, 2009. (Tr. 27). On June 22, 2009, the ALJ issued a decision finding Savoy not disabled. (Tr. 13).

Savoy sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an

error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Savoy's contentions, on March 9, 2010, the Appeals Council denied his request for review. (Tr. 1).

Savoy filed a timely appeal of the ALJ's decision. Both Savoy and the Commissioner have filed Motions for Summary Judgment (Document Nos. 21 & 14). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 606. (Document No. 7). There is no dispute as to the facts contained therein.

### III. Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir.1999). Indeed, Title 42, Section 405(g) of the Act limits judicial review of the Commissioner's decision: "The findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specially grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir.1979), the court may not "reweigh the evidence in the record, nor try the issues *de novo,* nor substitute its judgment" for

3

that of the Commissioner even if the evidence preponderates against the Commissioner's decision." *Chaparro v. Bowen,* 815 F.2d 1008, 1009 (5th Cir.1987); *see also Jones,* 174 F.3d at 693; *Cook v. Heckler,* 750 F.2d 391, 392-393 (5th Cir.1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir.1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of creditable choices' or 'no contrary medical evidence." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so

severe as to limit the claimant in the following manner:

> [He] is not only unable to do [his] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony,* 954 F.2d at 293 (quoting *Milan v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Legget v. Chater,* 67 F.3d 558, 563 n. 2 (5th Cir.1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir.1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir.1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990). If, at any step in the process, the Commissioner

determines that the claimant is or is not disabled, the evaluation ends. *Legget,* 67 F.3d at 564.

In this case, the ALJ determined that Savoy was not presently working (step one); that Savoy's obesity, asthma, and lung problems were severe impairments, but his restless leg syndrome and obstructive sleep apnea were non-severe impairments (step two); that these conditions, when considered both singly and in combination, did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (step three); that Savoy could not perform his past relevant work (step four); and that Savoy's impairments, taking into consideration his age, education, past work experience and RFC, do not prevent him from doing light work "in an environment which is reasonably free of noxious fumes, dust, smoke, and lint" (Tr. 21) (step five).

Savoy focuses most of his complaints on the ALJ's conclusions at step two. Namely, Savoy maintains that the ALJ's error in not finding Savoy's restless leg syndrome and sleep apnea to be severe impairments affected the ALJ's analysis at steps three, four, and five. In this appeal, the Court must determine whether substantial evidence supports the ALJ's step two finding, and whether the ALJ used the correct legal standards in determining the severity of Savoy's impairments.

## V. Discussion

At step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.[1] The step two requirement that the claimant have a severe impairment is

---

[1] The ability to do most work activities encompasses "the abilities and aptitudes necessary to do most jobs." *Williams v. Sullivan,* 960 F.2d 86, 88 (8th Cir. 1992). Examples include physical functions such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or

6

generally considered to be "a de minimis screening device to dispose of groundless claims." *Smoven v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). Simply put, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341(5th Cir. 1984); 20 C.F.R. 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); 20 C.F.R. § 404.1523. Even though the burden at step two lies with the claimant, the claimant need only make a minimal showing to move to the next step in the five step sequential process. With respect to a minimal showing, the mere presence of a condition is not sufficient to make a step two showing. *See Bowen*, 482 U.S. at 153.

Here, the ALJ found that Savoy had four severe impairments: asthma, chronic obstructive pulmonary disease, a history of back pain, and obesity. (Tr. 18). The ALJ also concluded that Savoy's sleep apnea and restless leg syndrome were not severe:

> The claimant has also been diagnosed as having sleep apnea, restless leg syndrome and depression. After carefully reviewing the medical evidence of record, however, the undersigned concludes that these impairments are not "severe" as defined in the Regulations. In support of this conclusion, the record contains no evidence that the claimant has been treated for sleep apnea or restless leg syndrome. According to

---

handling; capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation. *Id.* at 88-89; 20 C.F.R. § 1521(b).

> treatment records, the claimant presented for treatment in September 2008 with reports of nightly snoring and "sleep apnea" (Exhibit 9F, page 4). The claimant subsequently underwent a sleep study on May 11, 2009, which revealed finding[s] consistent with an obstructive sleep apnea syndrome and restless leg syndrome (Exhibit 14F, page 3). Following the evaluation, it was recommended that the claimant undergo another sleep evaluation to determine the benefit of titration (Exhibit 14F, page 3). As of date, however, there is no evidence that the evaluation was performed.

Tr. 18-19. The ALJ explained his finding that Savoy's restless leg syndrome and obstructive sleep apnea were non-severe impairments as follows:

> In this case, the claimant has failed to provide evidence which shows that he has sleep apnea or restless leg syndrome which has imposed more than slight or minimal limitations on his ability to perform work-related activities for a period of 12 months or longer… Therefore, as indicated above, the undersigned concludes that these impairments are not "severe." *See Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

(Tr. 19). The administrative record contains both objective medical evidence and self-reported subjective evidence of pain.

Objective medical evidence related to Savoy's sleep apnea and restless leg syndrome begins with a September 8, 2008, visit to Dr. Eric Warwick at the Harris County Hospital District. (Tr. 492). During that visit, Savoy complained of sleep apnea. (*Id.*). Savoy was diagnosed with "snoring: nightly, confirms that family reports stops breathing on occasion. States is not currently able to afford C-pap machine." (*Id.*). Dr. Warwick stated Savoy's general appearance was "alert" with "no apparent distress." (*Id.*). The exam also showed "lungs clear to auscultation with no wheezing, rales, or rhonchi." (*Id.*).

Savoy participated in a sleep evaluation on May 11, 2009, at the Harris County Hospital District Sleep Disorders Center. (Tr. 592). The report, signed by Philip Alapal M.D., diagnosed Savoy with obstructive sleep apnea syndrome and restless leg syndrome. (Tr. 592-93). The report details Savoy's complaints:

> The patient reports a history of loud snoring and frequent nocturnal awakenings. He sometimes awakens choking and gasping for breath. Cessation of breathing during sleep

> reportedly has been witnessed. Sleep is described as restless and he awakens in the morning unrefreshed. The patient complains of crawling sensations in his legs at sleep onset, nocturnal leg cramps, and leg kicking during sleep. The patient describes difficulty falling asleep and maintaining sleep. The patient ruminates and worries when attempting to sleep and is fearful about being unable to sleep. Early morning awakenings are a problem. Sleeptalking, nocturnal sweating, nocturnal heartburn, nightmares, morning headaches, and morning dry mouth are also noted. Pain from neck, back, chest, and head reportedly contributes to difficulty sleeping. Self-reported daytime sleepiness is significant and can take the form of uncontrollable sleep attacks/unexpected sleep onsets. Epworth Sleepiness Scale was 19 (8 is the upper limit of the normal range). The patient endorses possible cataplexy which is an ancillary symptom of narcolepsy.

(Tr. 592). Dr. Alapal's report "recommend[s] that another sleep evaluation be conducted for titration with positive airway pressure." (Tr. 593). The report also recommends "aggressive management of the sleep-relating gastroesophageal reflux," reaching "ideal body weight," management of Savoy's pain, and further clinical follow-up at a later date. (*Id.*). Finally, the report advises Savoy to "avoid driving or operating heavy equipment until the daytime sleepiness is adequately treated." (*Id.*).

The record also contains self-reported, subjective evidence of Savoy's symptoms and their effects on his ability to perform work-related activities. In a July 8, 2008, Function Report, when answering the question "Describe what you do from the time you wake up until going to bed," Savoy wrote, "I'm always very, very tired on a daily basis." (Tr. 141). In the same questionnaire, Savoy responded to the query, "Describe any changes in these [hobbies and interests] since the illnesseses, injuries, or conditions began," with, "No interest in a lot of things no more, no energy I'm too tired can't concentrate." (Tr. 145).

On September 25, 2008, Savoy submitted a Request for Reconsideration to the Social Security Administration after his initial claim was denied. (Tr. 77). Savoy stated his reasons for requesting reconsideration were: "I am unable to maintain employment due to my disability. Attempts to work have ended in termination due to my illness and/or hospitalizations. I become

9

fatigued and sluggish. My breathing becomes labored and difficult." (*Id.*).

On October, 9, 2008, Savoy filled out a second Function Report. (Tr. 161). Savoy listed chores he performs in his parents' home: "Get up and clean—Vacuum every other day. Fix the beds, will wash dishes, mop floor –clean up for parents—its an inside job and I will work until I get tired and out of breathe then I sit and rest." (*Id.*). Savoy added he "will watch TV for a while then get drowsy." (*Id.*). Savoy claimed he gets tired when he gets dressed. (*Id.*). Savoy affirmatively responded to the question "Do the illnesses, injuries, or conditions affect your sleep," by stating his symptoms: "Gasp for air, said I have sleep apnea, can't breathe out of nose, snore loud, said need oxygen machine." (*Id.*).

Savoy described his symptoms at the hearing on June 3, 2009. (Tr. 37-39). Savoy explained his trouble sleeping: "I fall asleep all the time on the jobs, at the house. I stop breathing at night. They say I got sleep apnea. They're trying to give me a CPAP machine." (Tr. 37). Savoy also explained he was fired from his last job at U-Haul, where he would "hook up trailers, was truckers, [and] pull up trucks," because "I fell asleeps in the bathrooms a lot." (Tr. 38-39).

Subjective evidence of pain, including the claimant's testimony and corroboration by family and friends, should be considered alongside objective medical evidence by the ALJ. *Hall v. Schweiker*, 660 F.2d 116, 118 (5th Cir. 1981). Not all pain is disabling, and the fact that the claimant cannot work without some pain or discomfort will not render him disabled. *Cook v. Heckler,* 750 F.2d 391, 395 (5th Cir.1985). The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment that

could reasonably be expected to cause the pain. Statements made by the individual or her physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423.

Credibility determinations such as those made by the ALJ in this case in connection with Savoy's subjective complaints of pain, are generally within the province of the ALJ to make. *See Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994). ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985)), *cert. denied,* 514 U.S. 1120 (1995). Although the ALJ may discredit a claimant's subjective complaints if inconsistencies with the objective medical evidence are present, *see Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995), the ALJ must provide the reasons for discounting the claimant's complaints:

> an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain.

*Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir. 1988); *see Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir. 1981) (stating "failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand."); *see also Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994).

Here, the ALJ's basis for finding Savoy's impairments non-severe at step two is, "the claimant has **failed to provide evidence** which shows that he has sleep apnea or restless leg syndrome which has imposed more than slight or minimal limitations on his ability to perform work-related activities." (Tr. 19) (emphasis added). However, the record contains objective

11

medical evidence in Dr. Alapal's May 11, 2009, sleep study evaluation report, which diagnoses Savoy with restless leg syndrome and sleep apnea, and in which Dr. Alapal states Savoy should "avoid driving or operating heavy equipment until the daytime sleepiness is adequately treated." (Tr. 592-93). Dr. Alapal's opinion concerning the activities Savoy should avoid shows that Savoy's sleep apnea and restless leg syndrome could significantly limit his ability to do basic work activities. Because Savoy has made a minimal showing as is required at step two, the ALJ erred in not considering restless leg syndrome and sleep apnea in the remaining steps of the sequential evaluation process.

To the extent that the ALJ relies on Savoy's failure to pursue medical follow-up, Savoy testified that additional treatment has not been sought due to this inability to pay. (Tr. 492). An impairment that can be reasonably resolved through medical treatment is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). However, if "the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor*, 782 F.2d at 1298. The record contains no evidence that Savoy had the economic means to pay for sleep apnea or restless leg syndrome treatment. In fact, Savoy reports to Dr. Warwick that he needs a C-pap machine to correct his sleep apnea, but cannot afford it. (Tr. 492). The ALJ erred by not properly considering Savoy's inability to pay for sleep apnea and restless leg syndrome treatment when determining the severity of those impairments at step two.

Moreover, the record contains numerous statements from Savoy complaining of symptoms allegedly stemming from his sleep apnea and restless leg syndrome. (Tr. 37-39, 77, 141, 145, 161, 592). The ALJ acknowledged that he was required to provide reasons for discounting subjective complaints from the claimant: "Whenever statements about the intensity,

12

persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statement based on a consideration of the entire case record." (Tr. 21-22). However, the ALJ failed to provide reasoning in his decision for discrediting Savoy's complaints.

The ALJ discussed Savoy's sleep apnea twice in his opinion (Tr. 18-19, 22). First, when explaining his step two decision (the section relevant to this appeal), the ALJ examined the objective medical evidence related to Savoy's restless leg syndrome and sleep apnea, but failed to discuss Savoy's subjective complaints. (Tr. 18-19). Second, in the section of his decision discussing Savoy's RFC, the ALJ provided approximately three pages of in-depth reasoning rejecting "the claimant's allegations of ongoing and disabling back pain." (Tr. 22-25). However, the ALJ only briefly mentioned Savoy's sleep apnea and restless leg syndrome:

> The claimant also testified that he has sleep apnea, and falls asleep all of the time.
>
> After careful consideration of the evidence, the undersigned find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Specifically, as discussed earlier, the records fails to establish that the claimant has sleep apnea which is "severe" as defined in the Regulations.

(Tr. 22). Notably, this discussion appears to occur after the ALJ had moved past step two in the five-step sequential evaluation process, and had already found Savoy's restless leg syndrome and sleep apnea to be non-severe.

For the foregoing reasons, the ALJ's decision falls short of providing "articulated reasons for discrediting the claimant's subjective complaints of pain." *Abshire*, 848 F.2d at 642. Thus, the ALJ erred by failing to apply proper legal standards when evaluating the severity of Savoy's restless leg syndrome and sleep apnea. As a result, substantial evidence fails to prove no

"evidence [ ] shows that [Savoy] has sleep apnea or restless leg syndrome which has imposed more than slight or minimal limitations on his ability to perform work-related activities."

## VI. *Conclusion*

Considering the record as a whole, it is the opinion of this Court that further consideration of the record is necessary because substantial evidence does not support the ALJ's finding that Savoy failed to provide evidence showing that his restless leg syndrome and sleep apnea are severe impairments. As such the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 12) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 22) is GRANTED, and this case is REMANDED to the Social Security Administration pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further proceedings consistent with this Recommendation.

Signed at Houston, Texas, this 20th day of June, 2011.

FRANCES H. STACY
UNITED STATE MAGISTRATE JUDGE